# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

MONTIE SPIVEY      Civil Action No. 6:21-2257

versus         Judge Robert R. Summerhays

CHITIMACHA TRIBE OF LOUISIANA, Magistrate Judge Carol B Whitehurst
 ET AL.

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. 16] filed by defendants the Chitimacha Tribe of Louisiana (the "Tribe"), Cypress Bayou Casino ("CBC"), April Wyatt, Jacob Darden, Toby Darden, and Jaqueline Junca (the "Tribal Council members") (collectively referred to hereinafter as "defendants"). The plaintiff opposes the motion [Doc. 20], and the Tribe filed a Reply brief [Doc. 23]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss for Lack of Subject Matter Jurisdiction be GRANTED, as explained hereinbelow.

## FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit arises out of a dispute between the plaintiff, a former Chief Financial Officer of the CBC, and the Tribe over payment of a bonus to O'Neil Darden, the Tribal Chairman. In his Complaint, Spivey alleges that in 2015, he was the CFO of CBC, a casino which is owned by the Chitimacha Tribe of Louisiana.

1

*See* Complaint ¶3.  Spivey alleges that in November 2015, O'Neil Darden was elected as the Tribal Council Chairman, but that prior to his election, Darden worked as an employee of the CBC as the Event/Catering Director.  *Id.* at ¶4.  Spivey alleges that at the time of the alleged incidents giving rise to his Complaint, the Tribal Council consisted of 5 individuals: O'Neil Darden (Chairman); defendants April Wyatt (Vice-Chairman); Jacob Darden (Council Member); Toby Darden (Council Member); and Jacqueline Junca (Secretary/Treasurer).  *Id.* at ¶5.

Spivey's Complaint sets forth that CBC has incentive plans in place for its employees to provide for the distribution of bonuses to be paid out when the Casino attains a targeted revenue.  *Id.* at ¶6.  Spivey alleges that in 2015, the targeted revenue for the casino was attained, which meant that employee bonuses would be paid out. Spivey alleges that Anthony Patrone, CEO of CBC, was in charge of formulating the incentive plan and determining which employees would be paid bonuses and how much the bonus would be for each employee.  Spivey contends that the allocation and amounts of all bonuses was required to be approved by the Tribal Council before distribution.  *Id.* at ¶8.

Chitimacha Tribal laws prohibit a council member from working in the Casino or receiving any funds in the form of payments from the casino.  *Id.* at ¶10.  Spivey contends that O'Neil Darden was a unique case because he was the first CBC employee to be elected as Tribal Chairman.  Prior to being elected, Darden held a

2

director position in event planning/catering with the CBC and had worked for nine months at the casino. *Id.* at ¶11.

Spivey alleges that in November 2019, Anthony Patrone attended a meeting with the Tribal Council, and one topic of discussion was whether O'Neil Darden should receive a bonus. Spivey alleges that the rationale for giving Darden a bonus was "based solely upon his employment as a director" with the casino, and it was determined that if Darden received a bonus, it would be a prorated amount based upon the amount of time he worked at the casino prior to becoming Tribal Council Chairman. The amount to be paid to Darden was determined to be approximately $3,900.00. Spivey alleges that there was no objection to Darden receiving this bonus at this initial meeting. *Id.* at ¶12.

Spivey contends that he was instructed by Anthony Patrone to add Darden back into the payroll system – from which he had been removed when he became Tribal Chairman – solely for the purpose of paying him his prorated bonus. Spivey alleges that this was the only way to accomplish the payment without subverting IRS guidelines regarding payroll taxes. Spivey alleges that as the CFO of the casino, he was responsible for overseeing the processing of the bonuses to employees, and that Darden's bonus was distributed via direct deposit on January 5, 2016. *Id.* at ¶13-14.

At some point between January 7, 2016 and January 22, 2016, a complaint was made to the Tribal Gaming Commission of an alleged "misappropriation of

bonus monies," and the Louisiana State Police was called to investigate. After investigating and interviewing several individuals, O'Neil Darden, Montie Spivey and Anthony Patrone were criminally charged for felony theft and unauthorized use of a moveable. Spivey and Patrone were physically arrested. As a result of the arrest, Spivey's Key License was suspended. *Id.* at ¶17.

Subsequently, the alleged charges were presented to the U.S. Attorney for the Western District of Louisiana. After review of the matter, the U.S. Attorney declined to prosecute and the matter was sent back to the Chitimacha Tribal Council, which was vested with the power to refer the matter to the local state district attorney or "do whatever is best in the interest of justice." The Tribal Council referred the matter to the District Attorney for the 16th Judicial District Court for the Parish of St. Mary, and Spivey was terminated from his position as CFO of CBC. On July 30, 2020, the District Attorney informed Spivey by letter that he would not be indicted and no further charges would be sought. *Id.* at ¶18-20.

On July 30, 2021, Spivey filed the instant lawsuit, naming as defendants the Chitimacha Tribe, CBC, and all Tribal Council members at the time of his termination except O'Neil Darden. Spivey's lawsuit seeks damages against the individual Tribal Council members for violations of his civil rights under 42 U.S.C. 1983 and 1985 in causing him to be criminally charged in connection with the actions set forth herein. He seeks punitive damages against the Tribal Council

members under 42 U.S.C. 1988.  The plaintiff also alleges state law claims of negligent and intentional tort against the Tribe and the CBC for the actions of the Tribal Council in bringing a frivolous criminal complaint against him.

The Tribe, CBC, and the individual Tribal Council members filed the instant motion to dismiss on October 1, 2021, seeking dismissal of all claims against them on grounds this Court lacks subject matter jurisdiction over the plaintiff's claims and on grounds the plaintiff fails to state any cause of action against any defendant.  The defendants also argue that the plaintiff's claims are time-barred.

## LAW AND ANALYSIS

### A. Legal Standard

#### 1.  Rule 12(b)(1) Standard

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case.  Fed.R.Civ.P.12(b)(1).  Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *citing Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996).

There are two types of challenges to a court's subject matter jurisdiction under Rule 12(b)(1): 'facial' attacks and 'factual' attacks. *Brown v. Peterson*, 2006 WL 349805, at *4 (N.D. Tex. Feb. 3, 2006), *citing Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981); *see also Brooks v. Snow,* 313 F.Supp.2d 654, 658 (S.D. Tex. 2004). A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges jurisdiction based solely on the pleadings. *Weinberger,* 644 F.2d at 523. When ruling on a facial attack, the court must presume that factual allegations in the complaint are true and determine whether they establish subject matter jurisdiction. *Id.* By contrast, a Rule 12(b)(1) motion presents a factual attack when the motion is accompanied by supporting evidence that contradicts the jurisdictional allegations in the complaint. *Id.* In a factual attack, the plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. *Id* .

Additionally, when a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curiam). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction

is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

In accordance with the above-cited law, this court shall resolve the jurisdictional issue raised by the defendant's 12(b)(1) motion first. Review of the Complaint shows that the plaintiff references language from the Tribal-State Compact of the Conduct of Class III Gaming Between the Chitimacha Tribe of Louisiana and the State of Louisiana (the "Tribal Compact") in his Complaint.[1] Additionally, the defendants have attached a certified copy of an excerpt of the Tribal Compact as an exhibit to their motion and the plaintiff has attached the agreement in its entirety as an exhibit to their opposition memorandum.[2] Accordingly, portions of the agreement have been considered by this Court in resolving defendant's 12(b)(1) motion.

## 2. Tribal Sovereign Immunity

The Chitimacha Tribe is one of four federally recognized Indian tribes in Louisiana. *See Brackeen v. Haaland*, 994 F.3d 249, 288 n. 9 (5th Cir. 2021). Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S. Ct. 1670, 1677, 56 L. Ed. 2d 106 (1978), *citing Turner v.*

---

[1] *See* Complaint, Doc. 1, at para. 18.

[2] *See* Doc. 16-2 and Doc. 20-1.

*United States*, 248 U.S. 354, 358, 39 S.Ct. 109, 110, 63 L.Ed. 291 (1919); *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512–513, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940); *Puyallup Tribe, Inc. v. Washington Dept. of Game*, 433 U.S. 165, 172–173, 97 S.Ct. 2616, 2620–2621, 53 L.Ed.2d 667 (1977). This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress.  But "without congressional authorization," the "Indian Nations are exempt from suit."  *United States v. United States Fidelity & Guaranty Co., supra*, 309 U.S., at 512, 60 S.Ct. at 656.  In *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788-89 (2014), 134 S.C.t 2024, 188 L.Ed.2d 1071, the Supreme Court stated:

> Among the core aspects of sovereignty that tribes possess -- subject, again, to congressional action -- is the "common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo,* 436 U.S., at 58, 98 S.Ct. 1670. That immunity, we have explained, is "a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.,* 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); cf. The Federalist No. 81, *789 p. 511 (B. Wright ed. 1961) (A. Hamilton) (It is "inherent in the nature of sovereignty not to be amenable" to suit without consent). And the qualified nature of Indian sovereignty modifies that principle only by placing a tribe's immunity, like its other governmental powers and attributes, in Congress's hands. See *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940) (*USF & G* ) ("It is as though the immunity which was theirs as sovereigns passed to the United States for their benefit"). Thus, we have time and again treated the "doctrine of tribal immunity [as] settled **2031 law" and dismissed any suit against a tribe absent congressional authorization (or a waiver).

Thus, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). It is settled that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), *quoting United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

Tribal sovereign immunity shields: (1) the Indian tribe; (2) entities of the tribe that function as an "arm of the tribe;" and (3) "all tribal employees acting within their representative capacity and within the scope of their official authority." *Mitchell v. Bailey*, 2019 WL 11340109, at *2 (W.D. Tex. Feb. 4, 2019), *aff'd in part, vacated in part, rev'd in part,* 982 F.3d 937 (5th Cir. 2020), *as revised* (Dec. 30, 2020), *citing In re Intramta Switched Access Charges Litig.*, 158 F. Supp. 3d 571, 575 (N.D. Tex. 2015) (noting that when a "tribe establishes an entity to conduct certain activities, the entity is immune if it functions as an arm of the tribe."). *See also Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006), *cert denied*, 549 U.S. 1231 (2007). This immunity extends to business activities of the tribe, not merely to governmental activities. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) ("The question is not whether the activity may be characterized as a business, which is irrelevant under *Kiowa,* but whether the entity acts as an arm

9

of the tribe so that its activities are properly deemed to be those of the tribe."). *See also Havekost v. Grand Casinos of Louisiana*, 2000 WL 33909243, at *1 (W.D. La. Dec. 8, 2000) (holding that Coushatta tribe was immune from suit filed by patron of the Grand Casino after she fell off of a chair that broke at the casino, noting "[t]ribal sovereign immunity extends to tribal enterprises, including gaming.").

## B. Analysis

In the instant case, Spivey argues that the Tribe, the CBC and the members of the Tribal Council all waived their immunity. Evidence of this waiver, Spivey argues, is found on Pages 9-10[3] of the Tribal Compact. The relevant language appears below:

Section 3:    Territorial and General Jurisdiction

(A)    The Tribe and the State recognize and respect all territorial rights and the independent sovereign existence of each other, and shall:

   (1)    Accord the fullest mutual respect to the legal institutions and cultural traditions of the Tribe and the State, insofar as they are consistent with preserving and protecting the health, safety, and welfare of all.

   (2)    As mutually agreed in this Compact, shall have all necessary concurrent jurisdiction for the protection of the public, the Tribe and the State.

   (3)    Avoid any undue adverse impact or expansive influence on traditional Tribal jurisdictional mechanisms, such as Tribal discussion and consensus, and on non-traditional

---

[3] Erroneously cited as Page 9 in the plaintiff's brief, Doc. 20, at p. 6.

but Tribally adopted written jurisdiction mechanism, such as the actions of representative bodies like Tribal commissions, boards, or courts, as these jurisdictional mechanisms pertain to Tribal jurisdiction over Tribal members. This intent to respect such existing intra-Tribal jurisdictional mechanisms applies particularly, but not exclusively, to those related to the recognition of the Tribe as possessing powers of self-government.

(B)    **The Tribe and the State shall retain all sovereignty and immunity to suit while discussing, negotiating, or confecting this Compact.**  The tribe and the State intend and agree that all issues purely of Tribal law are to be determined in accordance with the legal mechanisms of the Tribe.

(C)    To preserve and to protect the health, safety, and welfare of all, the Tribe and the State shall:

(1)  Preserve the full territorial and subject matter jurisdiction of the Tribe.

(2)  Preserve the full territorial and subject matter jurisdiction of the State.

(3)  Accord the State concurrent law enforcement authority within the lands of the Tribe designated in Appendix A of this Compact when exercising any subject matter jurisdiction accorded the State pursuant to this Compact.

(4)  Accord the Tribe, including its duly constituted Tribal law enforcement authorities, full territorial jurisdiction, as well as concurrent law enforcement authority within the lands of the Tribe and within any Parishes where they have been duly commissioned by a local law enforcement agency, when exercising any subject matter jurisdiction accorded the Tribe pursuant to this Compact, or when exercising the authority

accorded to the Tribe pursuant to any agreements made with a local law enforcement agency.[4]

Spivey argues that the highlighted portion of Section B of the Compact, set forth above, "implies that sovereign immunity is waived in some way once the [C]ompact is in effect." The undersigned does not interpret the language set forth in bold above to have such meaning. Rather, the undersigned interprets the bold language to mean, simply, that the well-settled rule of the sovereignty of the Tribe extends to the process of discussing, negotiating, and confecting the Tribal Compact, and is in full force and effect even during that process, before the Compact is, in fact, adopted and in official operation.

Plaintiff further asserts that the provisions of the compact that allow for concurrent criminal jurisdiction and which require the tribe to acquire insurance for any liabilities seemingly waive sovereign immunity. The undersigned disagrees. The existence of concurrent criminal jurisdiction does not waive sovereign immunity in a civil case. *Bonnette v. Tunica-Biloxi Indians,* 873 So.2d 1, 6-7 (La. App. 3 Cir. 2003). With regard to the insurance provisions at issue, the undersigned finds that Compact Sections 10(A)(4)(a) and (b) address the Tribe's obligations to carry insurance, but do not prohibit or limit the assertion of immunity. To the extent that the plaintiff relies on Compact Section 10(A)(4)(c) and (d), the court finds that those

---

[4] Cite to Compact

provisions, when read in context with other Compact provisions, do not apply to the Tribe.

These findings are consistent with well-settled law that any waiver of tribal sovereign immunity cannot be implied or inferred but must be "unequivocally expressed." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 790 (2014). Here, nothing in the Tribal Compact expressly authorizes Spivey (or any employee) to bring actions under federal and state law against the named defendants in federal court, and Congress has not authorized a waiver of immunity under these circumstances. To find otherwise, the Court must make the very inferences or implications that federal case law prohibits. Thus, the undersigned finds that all of the plaintiff's claim against the Tribe are barred.

Similarly, the undersigned concludes that all claims asserted against CBC are barred. In his Complaint, Spivey alleges that CBC is "a gambling casino owned by The Chitimacha Tribe of Louisiana" and is an "enterprise[] of" the Tribe. *See* Complaint ¶¶1(b), 6. The Complaint further alleges that the "Tribal Council is the governing body" of CBC and the "directors and officers of Cypress Bayou Casino answer to the Tribal Council." *Id.* at ¶6. In so alleging, the plaintiff is acknowledging that CBC is an "an arm or instrumentality" of the Tribe. Here, the undersigned finds that the casino acts as an arm of the Tribe so that its activities are properly deemed to be those of the Tribe. As an arm or instrumentality of the Tribe,

CBC is immune to suit. Because there has been no waiver of immunity on the part of CBC, or the Tribe as the governing body of CBC, the plaintiff's claims against CBC are also barred.

Finally, the plaintiff's claims against the individually named defendants are barred as well. In his Complaint, the plaintiff names April Wyatt, Jacob Darden, Toby Darden, and Jacqueline Junca as defendants, "individually" and in their capacities as either current or former Tribal Council members. Spivey alleges that the Tribal Council members, "in their individual capacities," intentionally caused and/or negligently allowed the frivolous criminal charges to be brought against the plaintiff. He further alleges that, under Louisiana state law, the Tribe itself is liable for the "intentional and negligent actions of its tribal council members bringing a frivolous criminal complaint against its employees." *See* Complaint ¶28.

As an initial matter, the undersigned notes that it is unclear from the Complaint whether the plaintiff intends to assert personal capacity or official capacity claims against the Tribal Council members, or both. The Complaint refers to three of the Tribal Council defendants "individually, *in* [his/her] capacity as a former council member" (emphasis added) and to one of the defendants as "individually *and* her capacity as the Chitimacha Tribe of Louisiana Council Vice Chairman" (sic, emphasis added). Under well-settled law, all claims alleged against these defendants in their official capacities are barred by the doctrine of sovereign

14

immunity.  To the extent the plaintiff alleges claims against these defendants in their individual capacities, the undersigned finds those claims are barred as well.

In *Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91, 197 L. Ed. 2d 631 (2017), the Supreme Court explained:

> [C]ourts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit. In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign.  If, for example, an action is in essence against a State even if the State is not a named party, then the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection. For this reason, an arm or instrumentality of the State generally enjoys the same immunity as the sovereign itself.  Similarly, lawsuits brought against employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent," and they may also be barred by sovereign immunity.
>
> . . . In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself. This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation.  The real party in interest is the government entity, not the named official.  "Personal-capacity suits, on the other hand, seek to impose *individual* liability upon a government officer for actions taken under color of state law." "[O]fficers sued in their personal capacity come to court as individuals," [. . .] and the real party in interest is the individual, not the sovereign.
>
> The identity of the real party in interest dictates what immunities may be available. Defendants in an official-capacity action may assert sovereign immunity. An officer in an individual-capacity action, on the other hand, may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances.

But sovereign immunity "does not erect a barrier against suits to impose individual and personal liability."

(internal citations omitted).  Under *Lewis*, this Court must consider what remedy the plaintiff is actually seeking.

In this case, after the Louisiana State Police investigated the bonus payment made to O'Neil Darden, the charges were presented to the U.S. Attorney for the Western District of Louisiana, who declined to prosecute and sent the matter back to the Chitimacha Tribal Council.  At that point, under the Tribal Compact, the Tribal Council was vested with the power to refer the matter to the local state district attorney or to "make an appropriate disposition that serves the interest of justice and respects the rights of any victim of such wrongdoing," as set forth below:

Section 4: Criminal Law Subject Matter Jurisdiction

The State and the Tribe shall share concurrent criminal jurisdiction and investigatory authority over all persons, including enrolled members of federally recognized Indian Tribes, who commit offenses made criminal by the laws of the United States of America or the State of Louisiana, on or within that portion of the Indian gaming lands that are described in Appendix A of this Compact. The concurrent criminal jurisdiction of the State is limited, however, in that if the subject of an investigation is an enrolled member of the Tribe, then at the completion of such investigation, and at the stage at which formal charges can be filed, or probable cause exists or is established to arrest such Tribal member, the results of such investigation shall be forwarded to the appropriate federal agency for further investigation, arrest, and/or investigation, and/or institution of criminal charge(s). **In the event the federal authorities decline to prosecute the matter, the Tribe may prosecute the matter within its Criminal Justice system, or refer the matter for State prosecution, or make an appropriate disposition that serves the interest of justice and respects the rights**

16

**of any victim of such wrongdoing.**  In exigent circumstances, and to protect any person from immediate bodily harm, the State may effectuate the arrest of a Tribal member. After such arrest, the defendant shall be prosecuted pursuant to the provisions herein. Any criminal law subsequently enacted or amended by the United States of America or the State of Louisiana shall be effective within this area and shall likewise be the concurrent enforcement responsibility of the State and the Tribe.[5]

The plaintiff claims that the Tribal Council members improperly referred a frivolous criminal charge to the State District Attorney after the U.S. Attorney declined to prosecute him.  For the purposes of this motion and the issue of sovereign immunity, the question before the Court is whether the referral by the Tribal Council of the incident to the district attorney for the 16th Judicial District Court for the Parish of St. Mary was an action taken by the Tribal Council members in their individual or official capacities.  It seems clear to the undersigned that these were official capacity actions.  The Tribal Council members sued herein were vested with the investigatory power -- as a Tribe -- to refer the matter to the state district attorney for prosecution, and this power is set forth clearly in the Compact.  Under the express language of the Compact, the "**Tribe** may prosecute the matter within its Criminal Justice system or refer the matter for State prosecution."  *See* Compact at Section 4(a) (emphasis added).  Here, the Tribal Council members decided -- on behalf of the Tribe -- to refer the matter to the St. Mary Parish district attorney.  Accordingly,

---

[5] *See* Tribal Compact, Section 4(A).

17

the plaintiff's allegations relate solely to the actions and decisions that the Tribal Council defendants made as a Council on the Tribe's behalf. It is clear to the undersigned that the Tribe and/or the Tribal Council – the sovereign -- is the real party in interest under these facts and circumstances.

Tribal sovereign immunity applies to Tribal officials and thus bars the plaintiff's claims against the Tribal Council defendants. A claim against Tribal officials in their official capacity is "another way of pleading an action against an entity of which an officer is an agent" -- in this case, the Tribe -- and is thus "barred by sovereign immunity," just like the claims against the Tribe. *Lewis*, 137 S. Ct. at 1290-91 (2017), *citing Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985). Accordingly, unless a sovereign expressly waives its immunity or Congress abrogates it, a suit brought for damages against an official acting in their official capacity is barred by the sovereign's immunity. *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir.), *cert. denied*, 141 S. Ct. 672 (2020); *see also Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 680 (E.D. La. 2012) ("Sovereign immunity also extends to state officials sued in their official capacity for monetary relief").

The plaintiff's characterization of his claims against the Tribal Council members in their "individual" capacities does not control the Court's analysis. If the "the relief sought is only nominally against the official and in fact is against the

18

official's office," then it is an official-capacity claim, and thus barred by sovereign immunity. *Lewis*, 137 S. Ct. at 1291, *citing Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Dugan v. Rank*, 372 U.S. 609, 611, 620–622 (1963)); *Corn*, 954 F.3d at 275 (sovereign immunity bars suit brought against state official named in his individual capacity because "there are no allegations that [the official] acted outside of his [official] duties"). Here, regardless of how the plaintiff characterizes his claims in his Complaint, the undersigned finds that the Tribal Council members acted on behalf of the Tribe in referring the matter to the State District Attorney. As such, the real party in interest is the Tribe, and all claims against the Tribal Council members in this capacity are barred.

Given that the undersigned finds that the plaintiff's claims against all defendants are barred by the doctrine of sovereign immunity, this Court makes no finding as to whether the plaintiff's claims are, as argued by the defendants, time-barred, or whether the plaintiff fails to state a cause of action. *See, e.g., Boone v. Union Carbide Corp.*, 205 F.Supp.2d 689, 693 n.3 (S.D. Texas May 24, 2002) (court declined to consider issue of timeliness of claim where it determined it lacked subject matter jurisdiction over the claim). Additionally, for these reasons, the issue of supplemental jurisdiction over state law claims is moot.

Considering the foregoing,

**IT IS RECOMMENDED** that the Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. 16] filed by defendants the Chitimacha Tribe of Louisiana, Cypress Bayou Casino, and the Tribal Council defendants be GRANTED IN PART. The Motion to Dismiss for Lack of Subject Matter Jurisdiction should be GRANTED, and all claims against all defendants should be DISMISSED WITHOUT PREJUDICE. The Court makes no finding as to the defendants' arguments that the plaintiff's claims are time-barred or fail to state a cause of action.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

   **THUS DONE AND SIGNED** this 2nd day of February, 2022 at Lafayette, Louisiana.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**